IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KATELYN HANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No.: |
| EAGLE-SPRING CREEK, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, KATELYN HANKS, by and through the undersigned counsel, and files this, her Complaint against Defendant, EAGLE-SPRING CREEK, L.P., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's EAGLE-SPRING CREEK, L.P., failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff KATELYN HANKS (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Dallas, Texas (Dallas County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in

1

performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes").

7.     Defendant, EAGLE-SPRING CREEK, L.P. (hereinafter "EAGLE-SPRING CREEK, L.P.") is a Texas limited partnership that transacts business in the State of Texas and within this judicial district.

8.     Defendant, EAGLE-SPRING CREEK, L.P., may be properly served with process via its registered agent for service, to wit:  c/o Lawrence E. Steinberg, Registered Agent, 5420 LBJ Freeway, Suite 570, Dallas, TX  75240.

## FACTUAL ALLEGATIONS

9.     On or about November 19, 2020, Plaintiff was a customer at "Mooyah Burgers, Fries & Shakes," a business located at 6100 K Avenue, Plano, TX  75074, referenced herein as "Mooyah Burgers".  *See* Receipt attached as Exhibit 1.  *See* also photo of Plaintiff attached as Exhibit 2.

10.    Defendant, EAGLE-SPRING CREEK, L.P., is the owner or co-owner of the real

property and improvements that Mooyah Burgers is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Defendant, EAGLE-SPRING CREEK, L.P., as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, EAGLE-SPRING CREEK, L.P., and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.   *See* 28 CFR § 36.201(b).

12.     Plaintiff's access to the restaurant located at 6100 K Avenue, Plano, TX  75074, Collin County Property Appraiser's property identification number 1716566 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.     Plaintiff lives 12 miles from the Property.

14.     Plaintiff has visited the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property are accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property are made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

15.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a

return customer as well as for Advocacy Purposes, but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

16.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered barriers to access at the Property, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

17.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

18.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

19.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

20.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

21.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

22.     The Property is a public accommodation and service establishment.

23.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

24.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of

$500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

25.     The Property must be, but is not, in compliance with the ADA and ADAAG.

26.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

27.     Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

28.     Defendant, EAGLE-SPRING CREEK, L.P., has discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

29.     Defendant, EAGLE-SPRING CREEK, L.P., will continue to discriminate against

Plaintiff and others with disabilities unless and until Defendant, EAGLE-SPRING CREEK, L.P., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

30.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     In front of Unit 120, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ii)    In front of Unit 120, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(iii)   In front of Unit 120, the accessible parking space is not level due to the presence of accessible ramp side flares in the accessible parking space in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iv)     In front of Unit 120, the ground surfaces of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(v)      In front of Unit 120, due to a failure to enact an adequate policy of maintenance, the sign identifying the accessible parking space is faded so as to render the sign not adequately visible in violation of section 502.6 of the 2010 ADAAG Standards.

(vi)     In front of Unit 120, the accessible curb ramp side flare has a surface slope in excess of 1:10 in violation of section 406.3 of the 2010 ADAAG Standards.  This violation would make it dangerous and difficult for Plaintiff to utilize this accessible ramp.

(vii)    In front of Unit 116, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(viii)   In front of Unit 116, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(ix)     In front of Unit 116, the accessible parking space is not level due to the presence of accessible ramp side flares in the accessible parking space in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(x)      In front of Unit 116, the bottom edge of the sign identifying the accessible parking space has a height below 60 inches in violation of section 502.6 of the 2010 ADAAG Standards.  This violation would make it difficult to locate the sign as it would be blocked by a vehicle parked there.

(xi)     Near Unit 108, there a vertical rise at the top of the accessible ramp that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property at this location.

(xii)    Near Unit 103, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xiii)   The accessible ramp located near Unit 103 lacks a clear and level landing of at least 60 inches in length in violation of section 405.7 of the 2010 ADAAG Standards.

(xiv)    The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There are 192 total parking spaces, but there are only four accessible parking spaces on the Property.  Section 208.2

of the 2010 ADAAG Standards requires six accessible parking spaces. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xv)   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

31.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

32.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

33.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

34.    All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

35.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

36.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, EAGLE-SPRING CREEK, L.P., has the financial resources to make the necessary modifications since the Property is valued at $1,774,364.00, according to the Property Appraiser website.

37.   The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit

and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

38.     Upon information and good faith belief, the Property have been altered since 2010.

39.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

40.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant, EAGLE-SPRING CREEK, L.P., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

41.     Plaintiff's requested relief serves the public interest.

42.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, EAGLE-SPRING CREEK, L.P.

43.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, EAGLE-SPRING CREEK, L.P., pursuant to 42 U.S.C. §§ 12188 and 12205.

44.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, EAGLE-SPRING CREEK, L.P., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, EAGLE-SPRING CREEK, L.P., in violation of

the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, EAGLE-SPRING CREEK, L.P., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, EAGLE-SPRING CREEK, L.P., to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: December 11, 2020.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


ATTORNEYS FOR PLAINTIFF
KATELYN HANKS